No. 84-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

RAYMOND GUIBERSON,

       Plaintiff and Respondent,

  -vs-

HARTFORD CASUALTY INSURANCE
COMPANY,

          Defendant, Third-Party Plaintiff
          and Appellant,

  -vs-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, TIM TINTINGER
and THE STATE OF MONTANA,

          Third-Party Defendants and
          Appellants.

APPEAL FROM: District Court of the Third Judicial District,
           In and for the County of Deer Lodge,
           The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Alexander & Baucus; Nancy Cory argued for Hartford
        Casualty Ins., Great Falls, Montana
        Michael J. McKeon argued for State Farm, Anaconda,
        Montana
        John Bobinski argued for State, Dept. of Administration,
        Helena, Montana

    For Respondent:

        Corette, Smith, Pohlman & Allen; R. D. Corette &
        Robert Carlson argued for Guiberson, Butte, Montana

                Submitted: June 13, 1985
                Decided: August 8, 1985

Filed: AUG 8 1985

*Ethel M. Harrison*

———————————————————————————
                    Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury in the Third Judicial District, Deer Lodge County, awarded plaintiff $600,000 in damages for injuries sustained after he jumped onto the trailer bed of his employer's beer truck in an attempt to prevent two escaped mental patients from absconding with it. In an amended judgment, the court found the State of Montana liable for half the verdict and the uninsured motorist (mental patient) liable for the other half. The State paid and settled its claims. Insurance companies appeal the amended judgment, and plaintiff cross-appeals to reinstate the original verdict.

We affirm the amended judgment to the extent that it determined the liabilities of the joint tort-feasors, the State of Montana and Tintinger, the uninsured motorist. We reverse the portion of the order which apportioned the liabilities in contract of the two insurance companies under their respective uninsured motorist provisions.

We hold that State Farm was the primary insurer with adequate coverage at the time of the accident to cover the entire liability of the uninsured motorist. Thus, Hartford as excess insurer owes nothing under these facts.

On January 14, 1981, Ray Guiberson was delivering beer to the Warm Springs Store in Deer Lodge County, Montana, and stopping to take orders for his employer, Roach & Smith Distributors, Inc. Ray was driving his employer's vehicle, a pickup truck with a fifth wheel trailer attached. He had left the keys in the ignition. While Ray was in the store, Tim Tintinger, a mental patient at Warm Springs State Hospital, jumped into the cab of the truck and another escaped

patient jumped into the attached unit. They began driving away.

Ray raced out of the store and jumped into the trailer attached to the moving truck. He unsuccessfully tried to talk the two patients into stopping the truck. When they reached Interstate 90, Tintinger began driving at a high rate of speed, finally driving through a highway patrol roadblock and overturning the truck. Ray was thrown out of the attached trailer. He suffered contusions and abrasions over his entire body. A severe skull fracture extending into the base of the skull resulted in partial permanent hearing loss and destruction of the labyrinth on the left side.

Ray first filed suit against his own personal insurer, Hartford Casualty Insurance, which had a policy provision in accordance with Montana law covering uninsured motorists. Ray sought to have this provision applied to Tim Tintinger as an uninsured driver. Hartford joined as third-party defendants State Farm Mutual Automobile Insurance Company and the State of Montana. State Farm insured the fourteen vehicles owned and used by Ray's employer, Roach and Smith Distributors. State Farm's policy also contained an uninsured motorist provision.

Hartford brought in State Farm as the ownership insurer. Hartford impleaded the State under a theory of subrogation, alleging that the State's negligence in supervising Tintinger was the proximate cause of its contractual obligation to its insured. State Farm cross-claimed against the State, incorporating by reference Hartford's arguments on issues relating to subrogation.

The District Court denied a motion filed by the State of Montana on December 17, 1982, asking for dismissal of the

third-party complaint against it. In February 1984 both State Farm and Hartford filed motions for summary judgment which the court denied. Finally, parties proceeded to trial on April 23, 1984. After several days of testimony, the jury returned a verdict on a special verdict form in favor of Ray for $600,000, finding Tintinger and the State equally responsible for Ray's injuries. Although the jury found the plaintiff Ray to be 10% negligent, it did not find that his negligence was a proximate cause of his injuries.

In the judgment entered May 2, 1984, the court decreed that "Plaintiff have and recover from the defendants, HARTFORD CASUALTY INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; TIM TINTINGER and THE STATE OF MONTANA, the sum of SIX HUNDRED THOUSAND AND NO/100 ($600,000.00) DOLLARS . . .." The State of Montana and Hartford moved to amend the judgment to conform to the verdict.

On May 30, 1984, the court rendered an amended judgment apportioning the $600,000 equally between the defendants found to be negligent and proximate causes of the injuries: Tim Tintinger, $300,000 and the State of Montana, $300,000. Relying on contractual language in the insurance policies, the court further apportioned the recovery of payments for the liabilities of Tintinger, the uninsured motorist, between Hartford and State Farm. The court based a pro rata apportionment on the limit of their respective coverages determined by "stacking," i.e., adding the total coverage for all vehicles for which each insured has paid a premium. For plaintiff's two vehicles at $50,000 each, Hartford's policy limits were $100,000; for plaintiff's employer's fourteen vehicles, State Farm's policy limits were $350,000. The

ratios of 100,000/450,000 and 350,000/450,000 reduced to fractions resulted in the following apportionment:

| | | | |
|---|---|---|---|
| (1). | Hartford | 22.223% | $ 66,669.00 |
| (2). | State Farm | 77.777% | $233,331.00 |
| | | | $300,000.00 |

There was no offset for plaintiff's negligence (10% on the special verdict form) because it was not a proximate cause of his injuries.

Hartford and State Farm appealed, and Ray Guiberson cross-appealed. The State settled its obligations with Ray on November 21, 1984. Under the terms of the settlement, the State paid Ray the sum of $145,000 cash and agreed to pay him $1,000 per month for life, with a thirty-year term certain for him and his designated beneficiaries. These payments commenced on January 1, 1985. Ray released the State from all claims he might have except those arising under the Workers' Compensation Act. His attorneys executed a satisfaction of May 30, 1984, amended judgment against the State.

We consider the following issues on appeal:

Hartford and State Farm's issues in common:

1. Is the State responsible for the entire jury verdict on the basis of subrogation?

2. Should the $300,000 limitation on governmental liability for damages in tort of § 2-9-107, MCA, retroactively apply and if so, is the limitation constitutional?

Hartford's issue:

3. Did the court err by apportioning pro rata the insurance companies' coverages when the Hartford policy states that it is only an excess insurer?

- 5 -

State Farm's issues:

4. Did the District Court err in "stacking" the $25,000 policy limits on each vehicle to arrive at a total limitation of $350,000?

5. Does State Farm uninsured motorist coverage apply when the vehicle was not driven with consent and the vehicle was insured under the liability coverage of that policy?

Guiberson's issues:

6. Should this Court dismiss the appeal of Hartford as frivolous and assess damages for an appeal taken for purposes of delay?

7. Should the original verdict be reinstated so that defendants State Farm, Hartford and Tintinger would be liable jointly and severally for $300,000 each?

Issue Number 1: Subrogation. Hartford and State Farm contend that the State in negligent and careless acts failed to supervise its patient, Tintinger. Contending that without Tintinger's escape, Guiberson would not have sustained injuries, the insurance companies claim that the State is the party truly liable. Hartford and State Farm believe that, standing in the shoes of the plaintiff, they should be subrogated to his right against the real party responsible for the injuries, i.e., the State.

The insurers incorrectly cite State Farm v. Solem (Mont. 1981), 622 P.2d 682, 38 St.Rep. 124, to support the insurers' right of subrogation following a jury determination of liability of the uninsured motorist. In fact, we held in Solem that State Farm had the procedural right under Rule 14(a), M.R.Civ.P., to implead the uninsured motorist or bring anyone who "may be" liable into the lawsuit in the first place under the principle of subrogation, without having to wait until

the insurer pays a judgment. Solem, 622 P.2d at 683. Thus, Rule 14 permits impleading on the principle of contingent liability. Of course, an insurance company has the right of subrogation to the rights of the plaintiff once liability is established. But the insurers misconstrue the procedure in stepping into Guiberson's shoes after the verdict and applying the procedure of impleading. Rule 14 permits impleading of third parties before trial; it does not substitute for a jury determination of liability.

The State and Tintinger were already properly impleaded under Rule 14(a), M.R.Civ.P. The jury verdict found both parties equally negligent and equal proximate causes of Guiberson's injuries. In the amended judgment, the court conformed the result to the jury finding, determining that the patient was responsible for one-half the judgment, the State responsible for the other half. The State has satisfied the claim against it for its own negligence. The insurers are subrogated to the rights of Guiberson against the uninsured motorist, Tintinger, for his personal liability, as determined by the jury. His negligence is not imputable to the State. The purpose of uninsured motorist provisions is to cover the individual liability of the uninsured motorist to the limits of the policy according to policy provisions. In this case, the insurers may proceed on the principle of subrogation against Tintinger alone for that portion of the judgment for which the State is not liable.

We affirm the District Court and hold that the State is responsible only for its own negligence in supervision. We hold that the insurance companies are subrogated to the right of plaintiff against the uninsured motorist alone because his liability is covered, not that of the State. The insurers

cannot alter a jury verdict of liability under a nunc pro tunc theory of contingent liability where liability is not contingent but determined.

Issue Number 2: Limited government liability for damages in tort under § 2-9-107, MCA.

For the reasons discussed on the State's liability for its own negligence alone and not for the entire jury verdict, we do not have to reach the constitutionality of limitation of damages or the retroactive application of the statute which was enacted after the incident at issue. The jury did not find the State liable for an amount exceeding the $300,000 limitation found in § 2-9-107, MCA, and the State has satisfied plaintiff's claims in tort against the State.

Issue Number 3: Primary / excess insurer.

Guiberson's personal insurer, Hartford, provides in its policy:

> "If there is other applicable similar insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." (Emphasis added.)

State Farm's policy on the beer truck states:

> "If the insured is injured while occupying your car, and your car is described on the declaration page of another policy providing uninsured motorist vehicle coverage, we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all such uninsured motor vehicle coverage applicable to the accident."

Hartford contends that the specific language of the uninsured motorist provisions in both policies when construed together denotes State Farm as the primary insurer and Hartford as the excess insurer under this factual situation. Hartford relies on Montana case law to illustrate that the

clauses are not repugnant and that Hartford's liability does not arise until the limits of the collectible coverage under State Farm have been exceeded. Mountain States Mutual Casualty Co. v. American Casualty Co. (1959), 135 Mont. 475, 342 P.2d 748.

State Farm argues that our court should adopt a rule that the company which provides the personal policy to the named insurer is the primary insurer, per a classification scheme found at 12A, Couch on Insurance 23 § 45:635, and other insurance be regarded as excess.

We find Hartford's argument more persuasive. It allows us to look at the policies as actually drafted by the insurers to determine the coverage agreed upon between insurer and insured. Hartford's policy clearly states that any insurance it provides to its named insured on any vehicle he does not own "shall be excess over any other collectible insurance." State Farm's policy has no provision covering excess insurance, and cannot claim by its policy to be an excess insurer.

As drafted, State Farm's policy claims liability only for its share "if the insured is injured while occupying your car, and your car is described on the declaration page of another policy providing uninsured motorist vehicle coverage . . .." This language activates a pro rata apportionment when the insured vehicle involved in the accident is described in another policy which provides uninsured motorist liability coverage, i.e., when there is more than one policy particularly describing and covering the vehicle.

Because Hartford's policy does not describe or cover the beer truck, it does not activate the shared liability provided for in State Farm's policy. Furthermore, Hartford's policy provides that it will pay its share "if there is any

other applicable similar insurance," i.e., when the named insured (here Guiberson) has other similar liability coverage on automobiles he owns. But vehicles not owned by the named insured come under the excess coverage provision.

We reverse the District Court on the apportionment of the $300,000 liability of Tintinger, the uninsured motorist, between Hartford and State Farm. We hold that Hartford was an excess insurer on vehicles not owned by the policyholder and that neither policy's language provided apportionment of liability under this factual situation, where the beer truck was not described in another policy and not owned by the plaintiff.

Issue Number 4: "Stacking" of coverage limits when separate premiums are paid for by the insured. Because we hold that Hartford is an excess insurer on vehicles not owned by its insured, we must determine what, if any, excess Hartford owes. The trial court stacked the $25,000 uninsured motorist liability limit (the same coverage the insured is entitled to) of each vehicle to arrive at State Farm's upper limit of $350,000 liability on behalf of the employer for the entire fleet of fourteen beer trucks. The court also stacked the coverage Guiberson purchased from Hartford on his two vehicles at $50,000 each to arrive at an upper limit of $100,000 under Hartford's policy.

We will not overturn the District Court's stacking in this case. At the time of the accident, the practice was recognized of adding coverage based upon the payment of separate premiums on separate vehicles. See, Chaffee v. U.S. Fid. & Guar. Co. (1979), 181 Mont. 1, 591 P.2d 1102; Kemp v. Allstate (1979), 183 Mont. 526, 601 P.2d 20. We held that

- 10 -

this liability coverage the insured had purchased extended to the uninsured motorist.

> "In applying Montana law, we determine that the uninsured motorist coverages are to be 'stacked'; that is, in policies of insurance which cover two or more vehicles, if a separate premium has been charged and collected on each vehicle for uninsured vehicle coverage, the insured is entitled to recover under uninsured motorist coverage sums found legally recoverable up to the aggregate sum of the coverages on all the motor vehicles so insured." Kemp v. Allstate, 601 P.2d at 24.

The accident occurred in January, 1981. The Montana Legislature passed a law abolishing stacking, § 33-23-203, MCA, which became effective on October 1, 1981. The lower court properly applied the law in effect at the time of the accident. Although the law forbids stacking now, we will not apply the law retroactively to deprive the plaintiff of coverage he was entitled to at the time of his accident. He was entitled to $350,000 coverage from the fourteen separate premiums his employer purchased from State Farm, plus $100,000 coverage from Hartford as the excess insurer. Because the liability of the uninsured motorist, Tintinger, was determined to be $300,000, State Farm as the primary insurer adequately covers the judgment and Hartford owes nothing as the excess insurer.

Issue Number 5: Consent of the insured vis a vis uninsured motorist coverage.

State Farm contends that its uninsured motorist provision on the truck does not cover the accident because the vehicle was used without the owner's consent and it was concurrently insured under liability coverage of the policy. State Farm claims an exclusion in its policy language.

[Applicable uninsured motorist provision]:

"An uninsured motor vehicle does not include a land motor vehicle:

"1. insured under the liability coverage of this policy; . . ." (Emphasis added.)

[Insured for liability coverage]:

"Insured means:

". . . [You, your spouse, relatives of the first person named in the declaration] . . .

"4. any other person while using such a car if its use is within the scope of consent of you or your spouse." (Emphasis added.)

This Court does not support provisions placed on uninsured motorist coverage which restrict or thwart available liability coverage that the insured would be entitled to in an accident.

"The purpose of the statute is to protect completely, those willing to accept its protection, from all harm, whatever their status--passenger, driver, pedestrian--at the time of injury, produced by uninsured motorists. The only restrictions are that the plaintiff must be an insured, the defendant motorist uninsured, and that plaintiff be legally entitled to recover." Jacobson v. Implement Dealers Mut. Ins. Co. (Mont. 1982), 640 P.2d 908, 911, 39 St.Rep. 325, 328, citing Elledge v. Warren (La.App. 1972), 263 So.2d 912.

Plaintiff Guiberson is an insured; he was in the bed of the beer truck pursuing his employer's interest in attempting to prevent its disappearing with mental patients. His use was within the scope of consent of Roach & Smith, Inc. The defendant Tintinger was an uninsured motorist. Consent to drive the beer truck is not only inapplicable to the defendant as an uninsured, but also irrelevant. Plaintiff is legally entitled to recover damages pursuant to a judgment rendered according to a jury verdict. The language of the uninsured motorist provision is nullified where it gives less coverage for acts of the uninsured than it would to the

- 12 -

insured, thus defeating the purpose of providing such coverage.

We hold that State Farm's uninsured motorist coverage was applicable to these facts and that the plaintiff is entitled to the full coverage available to the insured under the policy.

Issues Numbered 6 and 7. Plaintiff's motion to dismiss Hartford's appeal and plaintiff's claim that the original verdict be reinstated.

We will not dismiss Hartford's appeal as frivolous or initiated for purposes of delay. Hartford has prevailed on the substantive issue of whether it is an excess insurer, and raised the other substantive issue of subrogation which we found inapplicable to the State but applicable to the other tort-feasor, Tintinger. Plaintiff has entered the case to contest the amended judgment, contradicting his claim that Hartford's appeal is frivolous.

Plaintiff's argument that the original verdict of $600,000 should be reinstated jointly and severally against the tort-feasors, thereby making each one liable for the full $600,000, has become moot with plaintiff's settlement of all claims against the State. Furthermore, the insurers are not joint tort-feasors with the State, as indicated by the original judgment, and cannot be held jointly and severally liable because the insurer's relationship to the uninsured motorist is based on contract, not tort.

Hartford and State Farm contractually provided uninsured motorist coverage. Both are liable according to the terms of their contracts. Because State Farm's contract provides primary coverage and the policy limits by stacking permitted at the time of the accident are sufficient, State Farm is

responsible for the $300,000 liability of the uninsured motorist, Tintinger. Consequently, Hartford's provision to cover any excess uninsured motorist coverage on vehicles not owned by the insured plaintiff is not activated and Hartford is not responsible for any of the $300,000 verdict.

Affirmed in part and reversed in part.

_____
                Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

- 14 -