No. 89-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff and Respondent,

  -vs-

THE ESTATE OF GARY NELSON BRAUN,
Deceased, and CHESTER V. BRAUN,
Personal Representative of the Estate
of Gary Nelson Braun, Deceased,

        Defendant and Appellant.


APPEAL FROM: District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Barry G. O'Connell argued; Moore, O'Connell, Refling
        & Moon, Bozeman, Montana

    For Respondent:

        Lyman H. Bennett, III, argued; Morrow, Sedivy & Bennett,
        Bozeman, Montana


                        Submitted: December 12, 1989

                        Decided: May 24, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a grant of summary judgment in favor of State Farm regarding an insurance coverage dispute. The Eighteenth Judicial District Court, Gallatin County, Montana, determined that Canada's wrongful death damage limitation governed the damages available to appellants. The District Court held that State Farm had no obligation to appellants under either the uninsured or underinsured motorist provisions of the deceased insured's policy. We reverse and remand for further proceedings consistent with this opinion.

Appellants raise two issues for review:

1. Should Canadian law or Montana law govern the damages available to appellants for Braun's wrongful death given that Canada's wrongful death damage limitation conflicts with Montana law?

2. Does State Farm have an obligation to appellants under either the uninsured or underinsured motorist provisions of Braun's policy?

The parties stipulated to an agreed statement of facts. Briefly, the decedent, Gary Braun, died as a result of a motor vehicle accident that occurred near Creston, British Columbia. The driver of the vehicle in which Braun was a passenger was found liable for the accident. A Canadian insurance company, Alberta Motor Association Insurance Company, insured the vehicle with policy limits of $200,000. In wrongful death tort actions, Canadian law severely restricts damages and under the circumstances

of this case, Alberta Motor has advised appellants that it would not pay any claims in excess of funeral expenses.

At his death, the decedent was an insured of State Farm. The insurance contract was made in Gallatin County and the decedent's vehicle, to which the insurance contract applied, was principally garaged in Gallatin County. The insurance policy provided the decedent with uninsured and underinsured motorist coverage. The decedent paid a separate premium for each coverage. Also the policy provided that the coverages purchased extended to Canada.

I

This case presents a controversy between an insurer and an insured over the interpretation of an insurance contract. As such the dispute sounds in contract and should be resolved by contract law. The question of whether Montana law or Canadian law should govern the measure of damages available to appellants is a conflict of laws question regarding tort law. However, tort law only incidentally enters this dispute because the insurance policy requires that the tort-feasor's fault must be established before the insured can invoke the policy's underinsured motorist protection. No dispute regarding fault exists. As this dispute must be resolved by application of contract law, Issue II is dispositive and we need not discuss Issue I. Further, no question exists that Montana law governs the interpretation of the insurance contract at issue here and neither party argues to the contrary.

While we agree with respondent that appellants cannot recover under the uninsured motorist provision, we hold that the appellants can recover under the underinsured motorist provision of the decedent's insurance contract.

The insured purchased underinsured motorist coverage from respondent for which he paid a separate premium. Regarding underinsurance coverage, the policy provided as follows:

> We will pay damages for bodily injury and insured is <u>legally entitled to collect</u> from the owner or driver of an underinsured motor vehicle. (Emphasis added.)

The pertinent part of the definition of an underinsured motor vehicle is the following:

> Underinsured Motor Vehicle -- means a land vehicle:
>
> . . .
>
> (2) Whose <u>limits of liability</u> for bodily injury liability:
>
> a. are less than the amount of the insured's damages; or b. have been reduced by payments to persons other than the insured to less than the amount of the insured's damages. (Emphasis added.)

Also at issue is the following policy language:

> There is no coverage until the <u>limits of liability</u> of all bodily injury liability bonds and policies that apply have been used up by payments of judgments or settlement. (Emphasis added.)

Appellants contend that the District Court erred in determining that appellants were legally entitled to collect only the damages allowed by Canadian law. According to appellants, the

language "legally entitled to collect" simply means that the insured must have a cause of action against the tort-feasor and must be able to establish fault and the existence of damages. Further, appellants aver that the "limits of liability" language is contrary to an insured's reasonable expectations and to fully compensating injured parties for their losses. We agree.

Initially, respondent contends that the Canadian damage limitation operates as a limited immunity that is available to respondent because it is available to the Canadian tort-feasor. Analogizing to Hubbel v. Western Fire Ins. Co. (1985), 218 Mont. 21, 706 P.2d 111, respondent argues that the Canadian damage limitation is similar to the immunity provided under the Workers' Compensation statutes to employers and coemployees of injured workers. Workers' Compensation statutes and similar statutes deny a cause of action to an injured party in certain circumstances.

Contrary to respondent's assertion, reliance on Hubbel is misplaced. Hubbel involved an employee's heirs trying to collect under an allegedly negligent coemployee's uninsured motorist coverage. In Hubbel, we interpreted the language "legally entitled to recover damages" contained in the coemployee's uninsured motorist policy. We held that because the Worker's Compensation Act provided the exclusive remedy to an employee, Hubbel was not legally entitled to recover damages from the coemployee. Hubbel, 706 P.2d at 112-113. The Worker's Compensation statutes denied the employee a cause of action under the facts of that case. Distinguishable from the Hubbel facts, the appellants in this case possess a cause of action against the tort-feasor. Canadian law

5

does not deny injured parties a cause of action, it only restricts the damages recoverable.

Respondent also erroneously argues that the Canadian damage limitation shields respondent because it is available to the tortfeasor. In essence, respondent asserts that it is the tortfeasor's alter ego. However, tort law is relevant only as far as the fault requirement is concerned. Once an insured demonstrates a legal entitlement to damages, principles of contract law define the coverage afforded by an underinsurance motorist provision.

The instant case is similar to Karlson v. City of Oklahoma City (Okla. 1985), 711 P.2d 72. In Karlson, the Oklahoma Supreme Court had to interpret the phrase "legally entitled to recover" in an underinsurance motorist provision. The plaintiffs sued the City for wrongful death arising out of a collision with a city police vehicle. Because the Oklahoma Political Subdivisions Tort Claims Act limits the City's liability, the plaintiffs joined their underinsurance carrier as a defendant and sought to recover their excess damages under the underinsurance coverage. Karlson, 711 P.2d at 73. In reversing summary judgment for the insurer, the court held that the intention of the parties governed.

> When the insured and Allstate entered into their contract, they contemplated a situation where Allstate might be required to pay for injuries caused by some tortfeasor where the tortfeasor was not able to make full compensation for those injuries. Whether the tortfeasor's inability to make full compensation results from lack of sufficient insurance, insolvency, or for other reason, is irrelevant.
>
> The intention of the parties at the time of their contracting was that Allstate, not

6

its insured, would assume the risk that the insured might suffer a loss for which a tortfeasor could not make compensation. Our holding here merely gives effect to that intent.

In summary, we hold that in a situation where liability of a tortfeasor is limited...to an amount which will not compensate an insured for all his proven losses suffered in an automobile accident, that insured may recover from his insurer through the uninsured/underinsured motorist provisions of his automobile liability insurance, according to the terms thereof.

Karlson, 711 P.2d at 75. Thus, in spite of the damage limitation imposed by the Political Subdivisions Tort Claims Act, the Karlson plaintiffs were able to recover under their underinsurance coverage. The same reasoning guides our decision that respondent cannot take advantage of the Canadian damage limitation just because it is available to the tort-feasor. Contract law conditions respondent's obligation under the insurance contract, not tort law.

Respondent also argues that the language "limits of liability" contained in the definition of "underinsured vehicle" in the insured's policy plainly means the tort-feasor's stated policy limits, $200,000 in this instance. Also, according to the policy terms, the limits of liability must be expended before an insured can recover under the underinsurance provision.

In insurance contract actions, the reasonable expectations of an insured regarding the scope of coverage has been recognized. Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 180-181, 656 P.2d 820, 824. Under the facts of this case, the insured could reasonably expect the accident vehicle to qualify as underinsured,

7

particularly because the policy specifically provides that coverages purchased extend to Canada. A reasonable average insured is not going to be aware that Canadian law restricts damages severely in relation to Montana law. If State Farm's position is accepted, then State Farm sold to its insured and collected premiums for coverage in Canada that was worthless to the insured.

To allow State Farm to take advantage of Canadian damage law would negate the insured's reasonable expectations under its policy contract with the insurer. The insured could reasonably expect to recover the difference between what he could collect from the tort-feasor's policy and his proven damages, up to the policy limits purchased.

The purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tort-feasor does not provide adequate indemnification. Coverage under the terms of the policy at issue here should be predicated on an insured's damages excluding the indemnification actually available from the tort-feasor's liability insurance. In this case, even though the tort-feasor has $200,000 liability limits, that amount is not actually available because of Canadian damage restrictions. According to Alberta Motors Insurance Company, funeral expenses constitute the extent of its liability. Because the insured's damages will certainly exceed funeral expenses, the tort-feasor cannot provide adequate indemnification. As far as the appellants are concerned, the tort-feasor's remaining liability insurance is illusory. Therefore, we hold that appellants may recover under the insured's underinsurance motorist provision that he selected and

8

for which he paid if adequate compensation is not actually available from the insured tort-feasor because of the limitation of damages under Canadian law.

Our holding is not without precedent in other jurisdictions. Although Montana does not statutorily require that insurance companies offer underinsurance coverage, many states do.[1] The statutes fall into three categories which are based on comparisons of the tort-feasor's liability insurance with either the amount of underinsured motorist insurance, the amount of uninsured motorist insurance or the damages or injuries sustained by the insured. In a number of those states, either the statute itself, or court interpretation of the statute, requires that the relevant comparison be made with the amount of the tort-feasor's liability coverage that is actually available to an insured rather than to the stated liability limits that are theoretically available. Thus, through both express statutory definition and judicial statutory interpretation, underinsurance claimants have recovered in various situations which differ from simple comparison of stated coverage limits. These statutes and court opinions recognize, as does our holding, that a tort-feasor's liability coverage is deficient if it does not actually provide adequate compensation to the injured party. This deficiency may arise in various ways, the most common of which, as the instant policy recognizes, occurs through reduction or exhaustion of a tort-feasor's policy through

---

[1] Included in these states are Texas, Maryland, Ohio, Florida, North Carolina, Iowa and Oklahoma. See A. Widiss, Uninsured and Underinsured Motorist Insurance (2d ed. 1987).

payment to others. Significantly, deficiencies can also arise through damage limitations imposed by law.

In summary, we hold that the appellants can recover under the underinsured motorist provision of the insured's insurance policy with respondent. Appellants are legally entitled to collect damages from the Canadian tort-feasor because the tort-feasor's fault is established and damages exist. Respondent cannot avail itself of the Canadian damage limitation because contract law governs its relationship to appellants, not tort law.

We reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

10

Justice Fred J. Weber dissents as follows:

I respectfully dissent. The majority concludes that Montana contract law governs the interpretation of the insurance contract, including the insurance company's obligation under that contract. I conclude the majority holding directly conflicts with Montana contract law.

The District Court concluded that the defendants were legally entitled to collect only the damages allowed by Canadian law. The defendants argued that "legally entitled to collect" simply meant that the insured must have a cause of action and must be able to establish fault and the existence of damages. The majority agreed with that contention. The plain language of the contract does not support such a conclusion. The contract stated:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.

That contract provision makes no reference to a theory of having a cause of action, establishing fault and the existence of damages. Under the contract terms the insurance company has agreed with the insured to pay damages for bodily injury which the insured is "legally entitled to collect" from the driver of the underinsured motor vehicle. The venue of any action by the insured to recover damages for bodily injury against the driver of the other vehicle clearly is British Columbia, Canada. No factual or statutory basis has been established under which the insured could have sued the driver of the other vehicle in Montana. As a result,

11

we must look to the law of British Columbia to determine the damages which the insured is legally entitled to collect from the driver of the other vehicle. Here the defendants, as the representatives of the deceased insured, are legally entitled to collect only funeral expenses in British Columbia.

In disregarding the clear and explicit meaning of the above contractual provision, the majority has disregarded the provisions of § 28-3-401, MCA, which states:

> **EXTENT TO WHICH LANGUAGE GOVERNS INTERPRETATION.** The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.

I conclude that under the clear and explicit provisions of this contract, the defendants are entitled to recover only the amount which they could legally collect from the driver of the other vehicle in British Columbia.

Do other contract provisions contradict the foregoing interpretation? I conclude they do not. As set forth in detail in the majority opinion, another clause provides there is no coverage until the limits of liability of other policies "have been used up." The minimum liability limits under the Canadian policy were $200,000 and have not "been used up." That plain and concise language is also consistent with my previous interpretation.

I conclude that contract law theory contradicts rather than supports the majority opinion. In addition to contract law theory, the majority opinion bases its conclusions on the reasonable expectations of an insured. I emphasize that Montana law does not require underinsured coverage in an automobile policy, as do many

12

states. As a result, we have no legislative declaration of underinsurance requirements in Montana. No evidence was submitted showing the actual expectations of the deceased insured. In the absence of contrary requirements as established by Montana legislation, I can find no reasonable basis for this Court to disregard the clear and explicit provisions of the contract.

I would affirm the District Court.

_____
Justice

13